# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 13 CR 312 |
| | ) | |
| EDWARD NOVAK, et al. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court ordered a hearing on defendant Edward Novak's motion to suppress the fruits of a search warrant. Novak contends the warrant was procured by knowingly material misrepresentations and omissions. To obtain a hearing, Novak was required to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see also United States v. McMurtrey*, 704 F.3d 502, 508–09 (7th Cir. 2013) (applying *Franks* to misleading omissions).

The law enforcement officer whose affidavit was submitted in support of the warrant, an agent of the Federal Bureau of Investigation, is expected to testify at the hearing, which is set for Tuesday, September 29, 2014. In anticipation of the hearing, the government has produced some materials to defense counsel but has resisted production of other materials that the defense seeks. The government contends these materials are subject to one or more privileges, in particular the deliberative process

privilege or the work product doctrine. It has provided these documents for *in camera* review.

The second set of documents, which the government provided to the Court on Friday, September 26, 2014, consists of the unredacted versions of internal agency reports seeking approval for consensual monitoring by certain cooperating witnesses. The Court is not in a position to make a ruling on this material without further information from the government regarding the purpose for which the redacted versions have been disclosed to defense counsel. Ruling on that set of documents is therefore deferred.

The first set of documents consists of two earlier drafts of the FBI agent's affidavit that was submitted to obtain the search warrant and e-mail correspondence regarding the drafts between prosecutors and the agent and another investigating agent. The Court concludes that these documents are not protected by the privileges the government cites.

For the deliberative process privilege, the government cites *United States v. Zingsheim*, 384 F.3d 867 (7th Cir. 2004). In that case, a district judge had issued a "standing order" regarding procedures in all cases in which the government was, at sentencing, moving for a downward departure pursuant to U.S.S.G. § 5K1.1 based upon the defendant's substantial assistance to law enforcement. The order required the government, in any such case, to produce (among other things) recommendations by law enforcement and prosecutorial supervisory personnel approving the proposed sentencing departure, as well as a written report from a committee within the prosecutor's office memorializing the approval process. *Zingsheim*, 384 F.3d at 869.

The Seventh Circuit identified several problems with the district judge's standing order. Among other things, the court stated that "[m]ultiple privileges apply to most if not all of the matters" in question. The court stated:

> The attorney-client privilege covers conversations between prosecutors (as attorneys) and client agencies within the government. The work-product privilege applies to many other discussions between prosecutors and investigating agents, both state and federal. The deliberative-process privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position. And the executive privilege shields recommendations to high-ranking officials.

*Id.* at 871-72 (citations omitted). In the present case, the government does not rely upon (and in any event has made no showing supporting) the attorney-client privilege or executive privilege with regard to the drafts of the affidavit or the correspondence about those drafts.

The government's reliance on the deliberative process privilege is unavailing. That privilege, as the Seventh Circuit summarized it in *Zingsheim*, "covers memoranda and discussions . . . leading up to the formulation of an official position." *Id.* at 872. The Supreme Court decision concerning this privilege that the Seventh Circuit cited in *Zingsheim* indicated that the privilege's purpose "is to prevent injury to the quality of agency decisions" and that the privilege "protect[s] the decision making processes of government agencies" by "focus[ing] on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted).

Based on *Zingsheim*, an "official position" that brings the deliberative process privilege into play evidently can include a position taken by the government in

3

litigation—in *Zingsheim*, determination of whether to seek a departure under U.S.S.G. § 5K1.1.  But that is not what is at issue here.  The draft affidavits and correspondence concern formulation not of a litigation position but rather of testimony to be presented to a court by a witness, namely the FBI agent.  The government cites no case saying that the deliberative process privilege covers discussions between the government and a witness, even a law enforcement witness, regarding that person's anticipated testimony.

The work product privilege likewise does not preclude disclosure of the draft affidavits and correspondence.  As indicated in the Supreme Court decision that the Seventh Circuit cited in *Zingsheim*, the work product doctrine recognizes "a qualified immunity from discovery for the 'work product of [a] lawyer.'"  *FTC v. Grolier Inc.*, 462 U.S. 19, 24 (1983) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  In *Hickman*, the Court stated that

> [w]ere such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own.  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 511.

The work product privilege is not absolute, however, and it is overcome by a showing of substantial need.  As the Court stated in *Hickman*,

> [W]ritten materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had.  Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts.  Or they might be useful for purposes of impeachment or corroboration.

*Id.*

None of the materials in question reveal "the mental processes of the attorney[s] for the government," which is the core of what the work product doctrine is designed to protect. *United States v. Nobles*, 422 U.S. 225, 238 (1975). Indeed, it is not clear that the privilege applies at all to what amounts to prior drafts of testimony that a litigant is presenting to a court, which is what is at issue here. But even if so, the Supreme Court has held that the work product privilege is waived with respect to a witness when a litigant elects to present that person's testimony. *Id.* at 239. That is the case here. And even if it was not, given the nature of the inquiry at the upcoming hearing, Novak has made a sufficient showing of need with regard to relevant portions of the prior versions of the agent's affidavit as well as communications about the affidavit's contents.

The Court also notes that the prior versions of the affidavits likely amount to prior statements adopted by the FBI agent that must be produced pursuant to Fed. R. Crim. P. 26.2 or impeachment material that Novak is entitled to obtain as a matter of due process. The e-mail correspondence produced by the government reflects that the agent made only limited corrections to the draft affidavits, which is sufficient to indicate that she "adopt[ed] or approve[d]" the draft as her own statement. *See id.* 26.2(f)(1).

The Court has compared the two prior versions of the agent's affidavit with each other and with the final version that was presented to the magistrate judge who issued the search warrant. A good many of the changes are inconsequential or irrelevant with respect to the matters at issue on the motion to suppress. The Court is not ordering production of such materials in connection with the present ruling.

For the reasons discussed, the Court directs the government to produce the following, by no later than 12:00 noon on Monday, September 29, 2014:

- the 4/11/2013 cover e-mail and, from the attached draft affidavit, pages 5, 6, 7, paragraphs 35 and 39, page 17 footnote 11, page 18 footnotes 12 (the first one) and 11, paragraphs 52 and 53, and page 49 footnote 27;

- to the extent not covered by the foregoing, all prior drafts of the portions of the agent's affidavit that the Court identified in its oral ruling as the subject of Novak's substantial preliminary showing pursuant to *Franks* (specifically, the footnote disclosure of matters relating to the credibility of cooperating witness Puorro and paragraphs 27, 32, 38-39, 43, 81, 84 n.18, 86, and 113 of the final version of the affidavit, some of which are numbered differently in the earlier versions); and

- the e-mail strings starting with the following e-mails: Peter Theiler to Ryan Hedges, 4/13/2013 at 8:15 a.m.; Peter Theiler to Cathy Barbour, 4/13/2013 at 8:39:53; Cathy Barbour to Terra Reynolds, 4/13/2014 at 23:42:17; Cathy Barbour to Terra Reynolds, 4/14/2013 at 20:51:02; Cathy Barbour to Terra Reynolds 4/14/2013 at 20:54:24; and Joel Hammerman to Peter Theiler, 4/15/2013 at 03:10:57 (these collectively reflect the agents' adoption of the affidavits' prior drafts).

The materials are to be produced only to counsel for those defendants whom the Court has concluded have standing to challenge the search and seizure pursuant to the warrant. Absent prior permission by the Court, they are not to be disclosed by anyone

other than to those counsel and their clients, and they may be used by those defense counsel only for purposes of litigating the *Franks* motion.

Date: September 28, 2014    _____
MATTHEW F. KENNELLY
United States District Judge